Appeal No. 2020-1971
(Serial No. 90/009,995)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**IN RE SOFTVIEW LLC,**
**APPELLANT.**

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.

**BRIEF FOR APPELLEE—DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE**

THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

MICHAEL S. FORMAN
FRANCES M. LYNCH
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035
*Attorneys for the Director of the
United States Patent and Trademark Office*

January 25, 2021

1.    A *mobile device*, comprising:

a processor,

a wireless communications device operatively coupled to the processor, to facilitate communication with a network via which Web content may be accessed;

a touch-sensitive display;

a memory, operatively coupled to the processor; and

a storage means, operatively coupled to the processor, in which a plurality of instructions are stored that when executed by the processor enable the mobile phone to perform operations including,

enabling a user to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content on the Web page;

retrieving HTML-based Web content associated with the Web page;

translating the HTML-based Web content to produce scalable vector-based page layout information;

employing the scalable vector-based page layout information and/or data derived therefrom to,

render a view of at least a portion of the Web page on the touch-sensitive display using a first scale factor; and

*re-render the Web page in response to associated user inputs to enable a user to iteratively zoom in and out views of the Web page on the display while preserving the original page layout, functionality, and design of the content on the Web page defined by the HTML-based Web content,*

wherein preservation of the functionality defined by the HTML-based content includes preservation of hyperlink functionality.

Appx74 (emphasis added).

i

# TABLE OF CONTENTS

I. Statement of the Issue ...................................................................1

II. Statement of the Case...................................................................2

    A.    Claimed Invention: Scalable Display of Internet Content on a
         Mobile Device ...................................................................3

    B.    Pad++: A Zoomable Web Browser ......................................7

    C.    The Board's Decision .........................................................10

III. Summary of the Argument............................................................13

IV. Argument.....................................................................................16

    A.    Standard of Review ...........................................................16

    B.    The Board Correctly Affirmed the Obviousness Rejections of
         Claims 1-28, 32-39, 42, and 44-51 ....................................17

    C.    The Pad++ Browser Satisfies Claim 1 ...............................19

         1. Pad++ Teaches or Suggests the "Preserving" Limitation..............19

         2. SoftView's Arguments About Combining Pad++ With an
            Existing Browser Are Irrelevant and Contrary to Law.................23

    D.    Pad++ Provides the Motivation to Combine a Zoomable Browser
         With a Mobile Device or Mobile Phone .............................25

    E.    The Examiner and Board Correctly Found That a Skilled Artisan
         Would Have Had a Reasonable Expectation of Success ...................26

         1. Substantial Evidence Supports the Reasonable Expectation of
            Success Finding..............................................................26

         2. SoftView's Arguments to the Contrary Reflect an Overly-
            Restrictive Understanding of Obviousness.....................28

         3. SoftView's Technical Arguments Fail to Demonstrate Error in
            the Board's Analysis .......................................................30

a.  The Fact That Pad++ Was Designed for a Desktop Computer Does Not Negate the Obviousness Finding............31

b.  The Board Did Not Err by Relying on Professor Bederson's Testimony.................................................................................33

c.  Scott Forstall's Testimony Has No Relevance to This Case....35

d.  SoftView's "Empirical Test Evidence" is Irrelevant and Does Not Support its Non-Obviousness Argument.................36

e.  Professor Bederson's Subsequent Projects Do Not Impact the Obviousness Inquiry ............................................................39

f.  The Alleged Problems With Pad++'s Text Rendering is Not Evidence of Non-Obviousness.................................................40

F.   SoftView's Remaining Arguments Lack Merit .................................42

1.  SoftView Forfeited Any Argument Regarding the Touch-Sensitive Display Limitation............................................................42

2.  The Board Did Not Shift the Burden to SoftView to Prove Patentability.....................................................................................43

3.  The Board Did Not Enter a New Ground of Rejection.................44

V.  Conclusion........................................................................................................45

iii

# TABLE OF AUTHORITIES

**Cases**

*Accorda Therapeutics, Inc. v. Roxane Labs., Inc.*, 903 F.3d 1310 (Fed. Cir. 2018) ...............................................................................................................27

*Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367 (Fed. Cir. 2020 ..............................41

*Antor Media Corp., In re*, 689 F.3d 1282 (Fed. Cir. 2012) .....................................32

*ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214 (Fed. Cir. 2016) .................................24

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)..................................................16

*Constr. Equp. Co., In re*, 665 F.3d 1254 (Fed. Cir. 2011).......................................16

*Facebook Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321 (Fed. Cir. 2020)...30

*Gartside, In re*, 203 F.3d 1305 (Fed. Cir. 2000).....................................................16

*Gleave, In re*, 560 F.3d 1331 (Fed. Cir. 2009) .........................................................3

*Google Tech. Holdings, LLC, In re*, 980 F.3d 858 (Fed. Cir. 2020) ......................42

*Hill-Rom Servs., Inc., In re*, 634 F. App'x 786 (Fed. Cir. 2015)............................44

*Howmedica Osteonics Corp. v. Zimmer, Inc.*, 640 F. App'x 951 (Fed. Cir. 2016) 27

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359 (Fed. Cir. 2016) ............................................................................................... 16, 27

*Jolley, In re*, 308 F.3d 1317 (Fed. Cir. 2002) .........................................................17

*Keller, In re*, 642 F.2d 413 (CCPA 1981) ...................................................... passim

*Kronig, In re*, 539 F.2d 1300 (CCPA 1976) ...........................................................45

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007) ....................................... 25, 30

iv

*Kubin, In re*, 561 F.3d 1351 (Fed. Cir. 2009) ..................................................... 27, 34

*Lamberti, In re*, 545 F.2d 747 (CCPA 1976)..........................................................22

*Morsa, In re*, 803 F.3d 1374 (Fed. Cir. 2015) .......................................................33

*Mouttet, In re*, 686 F.3d 1322 (Fed. Cir. 2012) ........................................ 17, 24, 40

*O'Farrell, In re*, 853 F.2d 894 (Fed. Cir. 1988) .............................................. 27, 35

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085 (Fed. Cir. 1995) ................................................................................................................41

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007)............................. 27, 39

*Purdue Pharma L.P. v. Depomed, Inc.*, 643 F. App'x 960 (Fed. Cir. 2016) ..........41

*SoftView LLC v. Kyocera Corp.*, 592 F. App'x 949 (Fed. Cir. 2015) ......................2

*Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995 (Fed. Cir. 2016).............. 22, 23

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795 (Fed. Cir. 1999) ..........21

*Watts, In re*, 354 F.3d 1362 (Fed. Cir. 2004)................................................... 16, 42

## Regulations

37 C.F.R. § 41.50(c)...............................................................................................44

## STATEMENT OF RELATED CASES

The patent at issue in this case, U.S. Patent No. 7,831,926, was previously before this Court in *SoftView LLC v. Kyocera Corp.*, No. 2014-1599, 592 F. App'x 949 (Fed. Cir. 2015) (Judges Wallach, Taranto, Hughes).  Beyond the proceedings identified in SoftView's opening brief, the Director is unaware of any additional related cases pending in this or any other court that will directly affect, or be directly affected by, this Court's decision in the pending appeal.

## I. STATEMENT OF THE ISSUE

Appellant SoftView LLC owns a patent that claims a mobile device with a zoomable web browser—a user can zoom in on a portion of a website while preserving the original page layout, functionality, and design of the website. The browser accomplishes the zooming by translating the HTML-based content to produce scalable vector-based page layout information. In an ex parte reexamination, the Board found that the claims at issue would have been obvious in view of a group of prior art references describing the Pad++ zooming user interface.

Like the '926 patent, Pad++ discloses a zoomable web browser. And like the '926 patent, Pad++ translates the HTML content to vector information to perform the zooming while preserving the original page layout, functionality, and design of the website. Pad++ does not show the browser operating on a mobile device, but the Pad++ references contain multiple statements that the software was designed to operate on devices with small screens, such a Personal Digital Assistants. Given this disclosure, the Examiner and the Board found that a skilled artisan would have been motivated to run a zoomable browser on a mobile device to reach the claimed invention. The issue on appeal is whether the factual findings underlying the agency's obviousness determination are supported by substantial evidence.

## II.  STATEMENT OF THE CASE

SoftView owns U.S. Patent No. 7,831,926 ("the '926 patent"), entitled

"Scalable Display of Internet Content on Mobile Devices."  Appx34.  The '926

patent was filed on April 21, 2007 and issued on November 9, 2010. *Id.*  The '926

patent issued from an application that is a continuation of application No.

09/878,097, filed on June 8, 2001. *Id.*[1]  A third party requested ex parte

reexamination of claims 1-51, 59, 69, and 72 in the '926 patent, Appx112, and the

USPTO ordered reexamination of all requested claims,  Appx1800-1822.

During the reexamination, SoftView amended certain claims and cancelled

claim 69. *See, e.g.*, Appx1955.  Additionally, while the reexamination was

pending, the Board found claims 30, 31, 40, 41, 43, 52, 55, 59, 72, and 75

unpatentable in an IPR proceeding, and this Court affirmed that determination.

*SoftView LLC v. Kyocera Corp.*, 592 F. App'x 949 (Fed. Cir. 2015).  Thus, the

reexamination addressed the remaining claims at issue—claims 1-29, 32-39, 42,

and 44-51.  Appx2.  The Examiner finally rejected claims 1 and 3-28 as obvious in

---

[1]     SoftView relies on the June 8, 2001 filing date of the parent application as the earliest priority date. *See, e.g.*, Br. at 35, 42, 51-52 (citing June 2001 as the relevant time period for the obviousness analysis).

view of Pad++[2] and SVF[3] and claims 2, 32-39, 42, and 44-51 as obvious in view of

Pad++, SVF, Nokia,[4] and Palm.[5]  Appx2294-2334.  The Board affirmed these

rejections.  Appx1-28.  The Board reversed the Examiner's rejection of claim 29.

Appx23-27.[6]  This appeal followed.

### A.    Claimed Invention: Scalable Display of Internet Content on a Mobile Device

The '926 patent relates to "processing of Internet and World Wide Web

content to scalable forms for resolution-independent rendering and zoom- and pan-

enabling the display of content on mobile devices."  Appx58 at col. 1, ll. 56-60.

The patent explains that Internet content was designed for desktop computers with

a single fixed resolution.  *Id.* at col. 2, ll. 14-15.  This is a problem when

---

[2]    "Pad++" is a collection of eight references describing the Pad++ software. Appx5; Appx790-791; Appx792-803; Appx804-815; Appx816-850; Appx851-879; Appx880-963; Appx964-980; Appx981-1122.

[3]    "SVF" is a collection of references addressing the Simple Vector Format. Appx5; Appx1561-1569; Appx1612-1616.  This brief does not address SVF because the Examiner cited it as a cumulative reference and the Board did not rely on it.  Appx14-15.

[4]    Nokia Press Release, *Nokia Unveils World's First All-In-One Communicator for the Americas* (Sept. 19, 1996).  Appx1123.

[5]    Palm Press Release, *3Com Announces the Palm VII Connected Organizer, the First Handheld Solution for Out-of-the-box Wireless Internet Access* (Dec. 2, 1998).  Appx1124-1127.

[6]    The Board did not reach additional rejections entered by the Examiner. Appx27 (citing *In re Gleave*, 560 F.3d 1331, 1338 (Fed. Cir. 2009)).

attempting to display Internet content on "small screen, low resolution, or different aspect ratio devices, such as cell phones and hand held computers." *Id.* at col. 2, ll. 25-28. The patent discloses a mobile device that "allow[s] Web pages to be scaled (zoomed) and panned for better viewing on smaller screen sizes." *Id.* at col. 2, ll. 34-36.

The mobile device allows for zooming and panning by translating the HTML content into a scalable vector representation. *See, e.g.*, Appx66 at col. 17, ll. 42-45 (disclosing that the invention "generate[s] a scalable vector representation of the original page content"). Figure 5 discloses the process for translating the HTML content into a scalable vector representation. Appx50; Appx65 at col. 15, ll. 43-45. When the HTML content is received, it is parsed **150** to determine where to place the various objects on the display page. Appx50; Appx65 at col. 15, ll. 45-52. In this step, elements such as tables, graphic images, and text paragraphs are identified. *Id.* Next, bounding boxes are produced **152** based on logical groupings of content portions and a page layout. Appx50; Appx65 at col. 16, ll. 19-22. The bounding box defines an outlined shape within which the content appears, and a bounding box is created for each object. Appx65 at col. 16, ll. 31-35. "In most instances, the bounding box will be substantially rectangular in shape." *Id.* at col. 16, ll. 35-36. Figure 4A shows the original HTML content of a website, and Figure 4B shows the bounding boxes defining each object on the

website.  Appx43-44; Appx66 at col. 17, ll. 8-15.  The page layout is then defined **154** based on the bounding boxes, wherein the location of a given object is based on the location of other objects on the page.  Appx50; Appx66 at col. 17, ll. 16-30.

In the next step, a datum point is defined **156** for the page, and for the bounding box of each object.  Appx50; Appx66 at col. 17, ll. 45-47.  For example, Figure 4C shows a page datum point **262** is the upper left hand corner of the display frame.  Appx45; Appx66 at col. 17, ll. 47-50.  Figure 4C also shows the datum point for each bounding box, which is located in the upper left hand corner of the bounding box (e.g., item **250C**).  Appx45; Appx66 at col. 17, ll. 57-64. Once the page's datum point and an object's datum point are known, a vector can be generated **158** for each object.  Appx50; Appx66 at col. 17, ll. 65-67.  As shown in Figure 4D, the page datum point is assigned an XY value of 0, 0, while other objects are assigned XY values relative to 0, 0.  Appx46; Appx66 at col. 17, l. 67 to col. 18, l. 3.  For example, object datum **250C** is assigned an XY value of 150, 225, which represents its distance from page datum **262**.  Appx46; Appx66 at col. 18, ll. 3-6.

In the final step, a reference is created **160** for each object that links an object's content and attributes to the object's vector.  Appx50; Appx66 at col. 18, ll. 17-21.  For example, the reference for object 250B will know that it is a graphic

image having a bounding box that is 180 pixels high and 350 pixels wide with a vector value of 150, 225. *Id.* at col. 18, ll. 21-26.

Once the vector representation data is generated, the device can use that data, and the user-selectable scale and offset values, to display a zoomed or panned website. *See generally* Appx67 col. 19, l. 14 to col. 20, l. 48. Figure 6 discloses the steps involved in that process, and Figures 4F and 4G show an example of how the vector representation data is used to display the website in response to a user's scale and offset inputs. *Id.*; *see also* Appx48-49; Appx51.

Claim 1 recites:

> A *mobile device*, comprising:
>
> a processor,
>
> a wireless communications device operatively coupled to the processor, to facilitate communication with a network via which Web content may be accessed;
>
> a touch-sensitive display;
>
> a memory, operatively coupled to the processor; and
>
> a storage means, operatively coupled to the processor, in which a plurality of instructions are stored that when executed by the processor enable the mobile phone to perform operations including,
>
> enabling a user to request access to a Web page comprising HTML-based Web content defining an original page layout, functionality, and design of content on the Web page;
>
> retrieving HTML-based Web content associated with the Web page;

6

translating the HTML-based Web content to produce scalable vector-based page layout information;

employing the scalable vector-based page layout information and/or data derived therefrom to,

render a view of at least a portion of the Web page on the touch-sensitive display using a first scale factor; and

*re-render the Web page in response to associated user inputs to enable a user to iteratively zoom in and out views of the Web page on the display while preserving the original page layout, functionality, and design of the content on the Web page defined by the HTML-based Web content,*

wherein preservation of the functionality defined by the HTML-based content includes preservation of hyperlink functionality.

Appx74 (emphasis added).[7]

## B.    Pad++: A Zoomable Web Browser

Pad++ refers to a group of eight references that disclose the Pad++ Zooming

User Interface ("ZUI").  Appx790-791; Appx792-803; Appx804-815; Appx816-

850; Appx851-879; Appx880-963; Appx964-980; Appx981-1122.  In Pad++,

"[t]he user controls where they look . . . by panning and zooming."  Appx852; *see*

*also* Appx790 (stating that "[z]ooming and panning are the primary methods of

---

[7]    The USPTO notes that claim 1, as it currently stands, includes a reference to a "mobile phone" in the storage means limitation.  Appx74.  This reference to a mobile phone lacks antecedent basis and presumably should be understood as a reference to the previously-recited "mobile device."

navigation in Pad++").  The Pad++ project included a "zooming web browser" that "support[ed] multiscale representations of existing HTML pages."  Appx804; *see also* Appx791 (stating that Pad++ "can read in hypertext files written in Hypertext Markup Language (HTML)").

One of the references, "A Brief Tour Through Pad++" (Appx981-1122) (hereinafter referred to as "Pad++ Tour"), describes the "simple Pad++ web browser."  Appx1066.  First, the reference shows a HTML document:



Here is a screen snapshot showing Pad++ displaying an HTML document.

Appx1067.

Next, the reference shows a "zoomed in view of the document:"

8



Appx1069.  Pad++ Tour notes that "[h]otwords are shown in blue – positioning the

pointer over a hotword changes its color to red."  *Id.*  Pad++ Tour makes clear that

these "hotwords" are hyperlinks:

> Similarly, in the Pad++ HTML browser, some words are shown in
> blue.  They are 'hotwords' – positioning the pointer over the word
> causes it to change color to red.  When you click on the word, the
> appropriate document is placed on the Pad++ surface.

Appx1088.

Pad++ discloses that the zooming is accomplished using vector-based page

layout information.  *See, e.g.*, Appx864-871; Appx967-971.  An expert declaration

submitted by the Third Party Requester explains in detail how Pad++ uses vector

information to perform the zooming functions.  Appx1671-1678 ¶¶ 23-70.

Another reference, "Pad++: A Zoomable Graphical Sketchpad For

Exploring Alternative Interface Physics," states that Pad++ "is being designed to

operate on platforms ranging from high-end graphics workstations to PDAs (Personal Digital Assistants) and interactive set-top cable boxes." Appx853. Pad++ Tour discloses that "[y]our whole desktop could be zoomable" and that Pad++ "seems especially attractive for systems which have small screens, such as handheld computers (i.e. PDA's)." Appx1121. Pad++ sought to "address the information presentation problem of how to provide effective access to a large structure of information on a much smaller display." Appx853-854.

### C.    The Board's Decision

The Board affirmed the obviousness rejection of claims 1-28, 32-39, 42, and 44-51, and reversed the obviousness rejection of claim 29. Appx1-28. The Board first addressed the obviousness rejection of claims 1 and 3-28 in view of Pad++ and SVF. Appx7. The Board agreed with the Examiner that Pad++ Tour discloses the limitation requiring a mobile device to "re-render the Web page . . . while preserving the original page layout, functionality, and design of the content on the Web page defined by the HTML-based Web content" where preservation of the functionality includes preservation of hyperlink functionality. Appx7-12. The Board noted that Pad++ Tour discloses a zoomable web browser, and shows screenshots of a regularly-sized HTML document and a zoomed-in view of the same HTML document. Appx8-10. The Board found that this disclosure satisfies the "re-render" limitation in claim 1. Appx7-12.

10

Next, the Board rejected the argument that, at the time of Pad++ Tour, a skilled artisan would not have been able to create a zoomable browser without undue experimentation. Appx12-13. Specifically, the Board pointed to statements in Pad++ Tour showing the use of a "simple Pad++ web browser" that had zoom capabilities. Appx13 (quoting Appx1066). While the Board acknowledged that it may not have been possible at the time to create a zoomable version of Netscape or Mosaic, that does not mean that a skilled artisan would have been unable to implement zooming capabilities on any web browser. *Id.*

Addressing the limitation in claim 1 requiring "translating the HTML-based Web content to produce scalable vector-based page layout information," the Board found that Pad++ disclosed this translating. Appx13-15. The Board pointed to a disclosure in Pad++ that shows the use of x, y coordinates to produce either a zoomed out view or close up view. Appx14 (quoting Appx1077). The Board further noted that the Examiner "found that the multiple objects of Pad++ Tour, residing at specific x, y, zoom coordinates within a space, correspond to" the translating limitation in claim 1. Appx13. The Board rejected SoftView's arguments concerning SVF, explaining that the Examiner cited SVF as a cumulative reference for the translating limitation. Appx14-15.

Claim 2 depends from claim 1 and adds the limitation "wherein the device comprises a mobile phone." Appx74. The Board agreed with the Examiner that

11

Pad++ Tour's disclosure of a PDA satisfied the mobile phone limitation because a PDA "is defined as a palmtop computer having communications functions." Appx15-16.

SoftView pointed to the testimony of Professor Ben Bederson, an author on the Pad++ references, who testified that he never implemented Pad++ on a PDA at the time. Appx16. The Board found that this testimony was not contrary to the obviousness determination. It noted that Professor Bederson also testified that it would have been possible to run Pad++ on a PDA, even if doing so "would have been a challenge to work well." Appx17. Given this testimony, the Board found that a skilled artisan demonstrating "ordinary creativity" would have been able to create a zoomable browser to run on a mobile device. Appx17-18.

SoftView pointed to testimony of Scott Forstall, who worked on the development of the original iPhone for Apple, and argued that there was a lack of motivation to combine Pad++ with a PDA or mobile phone. Appx18-19. Mr. Forstall's testimony related to the challenges that Apple faced in designing a product that could bring the Internet to a mobile phone. *Id.* Regardless of this testimony, the Board still found that a skilled artisan demonstrating "ordinary creativity" would have experimented with the technical features such that Pad++ could run on a mobile device. Appx19. The Board reiterated that Pad++ itself

12

disclosed running the zooming user interface on a PDA, which is sufficient to satisfy claim 2. *Id.*

SoftView argued that the zooming function on the Pad++ browser would not have worked as intended during the relevant timeframe. Appx19-22. The Board found that, contrary to SoftView's assertions, a skilled artisan of "ordinary creativity" could have followed the direction provided in Pad++ to create a working zoomable browser for a PDA. *Id.* The Board again noted Professor Bederson's testimony that it would have been possible to run Pad++ on a PDA. Appx22.

### III.  Summary of the Argument

The '926 patent claims a mobile device that includes a zoomable web browser, where the zooming is accomplished by translating the HTML content to produce scalable vector-based page layout information. There is no dispute that the Pad++ references also disclose a zoomable web browser, where zooming is accomplished by translating the HTML content to produce scalable vector-based page layout information. While Pad++ does not show a mobile device running the zoomable browser, it states that "[t]he system is being designed to operate on" PDAs and that the Pad++ software "seems especially attractive" for small screen devices such as PDAs. Given these explicit suggestions in the Pad++ references, the Board correctly found that a skilled artisan, exhibiting ordinary creativity,

would have been motivated to run the Pad++ zoomable browser on a mobile device and would have had a reasonable expectation of success in doing so.

SoftView challenges certain factual findings underlying the obviousness determination.  First, SoftView argues that the Pad++ browser cannot preserve the original page layout, functionality, and design of web sites as required by claim 1.  But, as the Examiner and Board correctly found, Pad++ meets the "preserving" limitation because it shows an example of a user zooming in on a website, and the zoomed-in view preserves the original page layout, functionality, and design of the website.  Moreover, Pad++ shows that the website hyperlinks are preserved after zooming.

Next, SoftView questions the Board's determination that a skilled artisan would have had a motivation to run a zoomable browser on a mobile device.  The Examiner and Board correctly found that the motivation to do so comes directly from Pad++, which contains multiple references explaining how the zooming user interface is ideally suited for mobile devices with small screens, such as PDAs.

SoftView's remaining arguments center on the assertion that a skilled artisan would not have had a reasonable expectation of success in making the claimed invention.  SoftView's argument is based on the flawed legal premise that the obviousness inquiry requires an analysis of whether a skilled artisan could have run the unaltered Pad++ software, as it existed in 2001, on a mobile device

14

available at the time.  SoftView went so far as to hire experts to download the

publicly-available Pad++ software and test it on simulated mobile device hardware.

But, as this Court has repeatedly explained, this is the incorrect analysis—

obviousness does not require the showing of bodily incorporation that was the

focus of the experts' testing.  Instead, the Examiner and Board correctly focused on

what the prior art would have suggested to one of ordinary skill in the art.  There is

no dispute that Pad++ discloses a zoomable browser and expressly suggests

running the ZUI on a mobile device.  And, as the Examiner and the Board correctly

found, an ordinary artisan using "ordinary creativity" would experiment with

technical features such that Pad++ could run on a mobile device.

Finally, even if the Court finds that SoftView's testing evidence is relevant

to the obviousness analysis, it does not support SoftView's assertions regarding

obviousness.  Instead, SoftView's testing showed that Pad++ would have run on

mobile devices at the time, although it would have run slowly.  This is fully

consistent with deposition testimony from the creator of Pad++, who believed that

it would have been feasible to run the software on a mobile device.  Because the

claims do not include any processing speed requirements or minimum animation

rates for zooming, SoftView's arguments regarding the sub-par performance of

Pad++ are irrelevant.

Because the obviousness rejection is supported by substantial evidence and correct as a matter of law, this Court should affirm the rejection of claims 1-28, 32-39, 42, and 44-51 in the '926 patent.

## IV. ARGUMENT

### A.    Standard of Review

SoftView has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). Obviousness is a question of law based on underlying findings of fact. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). "The determination of what a reference teaches is one of fact, as is the existence of a reason for a person of ordinary skill to combine references." *In re Constr. Equip. Co.*, 665 F.3d 1254, 1255 (Fed. Cir. 2011). Whether a skilled artisan would have had a reasonable expectation of success in making the claimed invention is a question of fact. *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016). This Court reviews the Board's legal conclusion of obviousness *de novo*, but must uphold the Board's fact findings if they are supported by substantial evidence. *Gartside*, 203 F.3d at 1316.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support" the conclusion reached. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is "something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Mouttet*, 686 F.3d

16

1322, 1331 (Fed. Cir. 2012).  For example, "where two different, inconsistent

conclusions may reasonably be drawn from the evidence in record, an agency's

decision to favor one conclusion over the other is the epitome of a decision that

must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d

1317, 1329 (Fed. Cir. 2002).

### B.    The Board Correctly Affirmed the Obviousness Rejections of Claims 1-28, 32-39, 42, and 44-51

Substantial evidence supports the Examiner's and Board's obviousness

findings.  Appx1-28; Appx2301-2302 (Final Rejection incorporating by reference

Replacement Claim Chart CC-F (Appx3831-3907)).  Looking to claim 1, Pad++

teaches or suggests use of a PDA, which is a mobile device including a processor,

wireless communications device, a touch-sensitive display, memory, and storage

means.  Appx853; Appx1121; Appx3831-3840.  Pad++ discloses a browser that

renders the original page layout, functionality, and design of a website.  Appx804-

815; Appx1066-1076; Appx3840-3843.  Pad++ allows for zooming in and out of

views of the website, where the zooming is accomplished by translating the

HTML-based web content to produce scalable vector-based page layout

information.  Appx864-871; Appx967-971; Appx1066-1076; Appx1671-1678;

Appx3844-3889.  In response to a user input to zoom in or out, the Pad++ browser

re-renders the web page while preserving the original page layout, functionality,

and design of the content on the web page defined by the HTML-based web

17

content.  *Id.*; Appx3889-3900.  The preservation of the functionality includes

preservation of hyperlink functionality.  Appx1069; Appx1088; Appx1678-1680;

Appx3900-3907.

Claim 2 depends from claim 1 and adds the limitation that the mobile device

is a mobile phone.  Appx74.  Pad++ teaches or suggests this limitation because it

states that the zooming interface can be used on a PDA (Appx853-854;

Appx1121), and the Board found that a "PDA is defined as a palmtop computer

having communications functions," making it an "obvious variant" of a mobile

phone.  Appx15-16.

Finally, while Pad++ does not expressly show a zoomable web browser

running on a mobile device, the Examiner and Board correctly found a motivation

to run the zoomable browser on a mobile device.  Appx15-16; Appx3218-3219.

Pad++ suggests the combination, as it states that the zooming user interface is

"especially attractive for systems which have small screens, such as handheld

computers (i.e. PDA's)."  Appx1121; *see also* Appx853-854 (noting that Pad++

was designed to operate on PDAs and "address[es] the information presentation

problem of how to provide effective access to a large structure of information on a

much smaller display").

### C.    The Pad++ Browser Satisfies Claim 1

#### 1.  Pad++ Teaches or Suggests the "Preserving" Limitation

In claim 1, when the mobile device re-renders a website in response to a user input to zoom in or out, it must "preserv[e] the original page layout, functionality, and design of the content on the Web page defined by the HTML-based Web content." The Board found that Pad++ Tour discloses this limitation. Appx7-10.

The Board relied on the figures disclosed in Pad++ Tour to meet the "preserving" limitation. Appx7-10. Pad++ Tour discloses a "simple Pad++ web browser." Appx1066; *see also* Appx804-815 (describing a Pad++ "prototype zooming browser"). A figure shows a website identified as "Ben Bederson's Home Page:"



Here is a screen snapshot showing Pad++ displaying an HTML document.

Appx1067.

Next, the reference shows a "zoomed in view of the document:"



Appx1069.  Pad++ Tour notes that "[h]otwords are shown in blue – positioning the pointer over a hotword changes its color to red."  *Id.*  Pad++ Tour makes clear that these "hotwords" are hyperlinks.  Appx1088 ("When you click on the [hotword], the appropriate document is placed on the Pad++ surface.").

The Board correctly found that this discloses or suggests that a user may zoom in on a website while preserving the original page layout, functionality, and design of the content on the website.  Appx10.  As seen above, the zoomed-in example in Pad++ Tour preserves the original page layout and design of the website.  Appx1067; Appx1069.  Pad++ Tour preserves the website hyperlinks when rendering a zoomed-in version of the website, which is an example of preserving the website functionality.  *Id.*; Appx1088.

SoftView argues that Pad++ does not disclose the "preserving" limitation, not because of any issues with Pad++'s zooming, but because the Pad++ browser was incapable of handling many "fundamental HTML features."  Br. at 27-28.[8] For support, SoftView cites the declaration of Dr. Glenn Reinman, who stated that he downloaded the publicly-available Pad++ software and found that it lacked many basic HTML features, such as forms.  Appx2903-2906 ¶¶ 26-34; *see also* Appx2724-2726 ¶¶ 44-48 (declaration of Michael L. Howard, agreeing with Dr. Reinman that the Pad++ software lacked certain widely-used HTML features).  Dr. Reinman also testified that it is unclear if the Pad++ browser displayed the original page layout, functionality, and design of the "Ben Bederson's Home Page" website.  Appx2902-2903 ¶ 23.

SoftView's argument misapprehends the obviousness analysis.  Pad++ Tour shows a website and a zoomed-in version of that website, and the original page layout, functionality, and design of the website defined by the HTML-based Web content appears to be preserved after the zooming is performed.  Appx8-10.  Even if it cannot be conclusively proven that the Pad++ browser was able to fully render

---

[8]    While SoftView attempts to frame this as a claim construction issue (Br. at 22-26), it is unnecessary for this Court to engage in any claim construction analysis to resolve the parties' dispute.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those [claim] terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.")

21

all of the layout, functionality, and design of "Ben Bederson's Home Page," the Pad++ Tour disclosure, at minimum, suggests the "preserving" limitation, which is all that is required to demonstrate obviousness. *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976) (stating that "the question under 35 U.S.C. § 103 is not merely what the references expressly teach, but what they would have suggested to one of ordinary skill in the art at the time the invention was made").

An obviousness analysis does not demand a full exploration of the Pad++ source code to see what HTML features were, and were not, included. *See Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1003 (Fed. Cir. 2016) ("For [a] technique's use to be obvious, the skilled artisan need only be able to recognize, based on her background knowledge, its potential to improve the device and be able to apply to technique."). Thus, it is irrelevant to examine the number of websites that the Pad++ browser could have properly rendered in 2001 (*see* Br. at 41-42), because it is not necessary to show that the exact Pad++ browser would have perfectly rendered every web page in existence at the time; instead, the Examiner and Board properly focused on what the Pad++ references taught or suggested to a skilled artisan during the relevant time period. *See, e.g.*, Appx3222 (Examiner stating that "[w]hat is important is what the combined teachings of the references would have suggested to those of ordinary skill in the art").

22

Finally, SoftView's experts admitted that the HTML features allegedly missing from the Pad++ browser were common features known to skilled artisans at the relevant time. Appx2904-2905 ¶¶ 29-34 (stating that the missing HTML features "were widely used in 2000"); Appx2725 ¶ 45 (stating that the Pad++ source code did not "implement many of the common HTML tags used on web pages by 1998"). Even if the "preserving" limitation requires that the zoomable browser include all of the HTML features available at the time, a skilled artisan would have known how to use a browser that incorporated such "widely used" and "common" features. *Id.* And even if it were a requirement for the Pad++ browser to fully render the layout, functionality, and design of websites, the fact that it could fully render some, but not all, websites would be enough to satisfy the obviousness inquiry. *See Unwired Planet*, 841 F.3d at 1002 (explaining that "combinations of prior art that sometimes meet the claim elements are sufficient to show obviousness").

### 2. SoftView's Arguments About Combining Pad++ With an Existing Browser Are Irrelevant and Contrary to Law

SoftView argues that the Board erred by not identifying "any browser for which the teachings of Pad++ would be applied to obtain a zoomable browser meeting the preservation limitation." Br. at 36. Whether Pad++ could have worked with other existing browsers is irrelevant because, as explained above, the

Pad++ browser disclosure is sufficient to meet the "preserving" limitation.  Appx7-10.

Regardless, SoftView is incorrect to assert that the evidence must show that a skilled artisan could have combined the existing Pad++ software with "any existing browser (by June 2001) and obtain the inventions claimed in the '926 patent."  Br. at 35.  In making this argument, SoftView is demanding a showing of bodily incorporation—that the Pad++ software could be incorporated into web browsers available during the relevant time period.  But this Court has explained that such bodily incorporation is not required in an obviousness analysis.  *Mouttet*, 686 F.3d at 1332 ("It is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements."); *In re Keller*, 642 F.2d 413, 425 (CCPA 1981) (explaining that "[t]he test for obviousness is not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference"); *see also ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016) (stating that "*KSR* does not require that a combination only unite old elements without changing their respective functions").

Obviousness is not limited to determining whether "a person of ordinary skill can only perform combinations of a puzzle element A with a perfectly fitting puzzle element B."  *ClassCo*, 838 F.3d at 1219.  Instead, obviousness inquiry takes

into account the teachings of the prior art as a whole in view of the common sense and creativity of the person of ordinary skill in the art. *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 419-21 (2007). So, even if Pad++ did not already disclose a zoomable browser that satisfies claim 1, it was unnecessary for the Examiner or the Board to show that the Pad++ software, without modification, could have been incorporated into browsers existing in 2001.

### D. Pad++ Provides the Motivation to Combine a Zoomable Browser With a Mobile Device or Mobile Phone

As described above, the Pad++ references contain multiple statements suggesting that Pad++ would be ideal for PDAs. Appx853-854 (stating that Pad++ was designed for use on devices with small screens, such as PDAs); Appx1121 (noting that Pad++ is "especially attractive" for PDAs). These explicit statements demonstrate the intention to use Pad++, including the Pad++ browser, on a PDA or other small-screened device and constitute sufficient evidence of a motivation to combine. *Id.*; Appx3218-3219 (Examiner explaining that the "motivation is clear" to run the Pad++ browser on a PDA); *see also* Appx3221-3222.

SoftView argues that a skilled artisan would not have been motivated to combine Pad++ with a PDA or mobile phone because there is no evidence that Pad++ was designed to run on a mobile device or that anyone tried to run the Pad++ browser on a mobile device. *See, e.g.*, Br. at 38-41, 45. The fact that Professor Bederson never tried to run Pad++ on a PDA, or that the Pad++ code was

not written to run a PDA, does not change the result. Requiring such evidence is contrary to the aim of the obviousness inquiry, which looks at "what the combined teachings of the references would have suggested to those of ordinary skill in the art." *Keller*, 642 F.2d at 425; *see also* Appx3222 (Examiner explaining that "[t]he fact that . . . Bederson . . . did not choose to . . . run Pad++ on a PDA is not relevant" because "[w]hat is important is what the combined teachings of the references would have suggested" to a skilled artisan).

In addition, SoftView asserts that the Pad++ references do not include any specific statements suggesting use of the Pad++ browser, as opposed to the Pad++ ZUI, on a mobile device. Br. at 40. It is correct that the statements suggesting using Pad++ on a PDA do not specifically refer to the Pad++ browser. Appx853-854; Appx1121. Instead, these statements refer generally to the Pad++ ZUI, and the Pad++ browser was one application that used the Pad++ ZUI. *Id.*; Appx1066. There is no reason to discount these statements simply because they refer to the Pad++ ZUI in general, and are not specifically directed to the Pad++ browser.

### E.   The Examiner and Board Correctly Found That a Skilled Artisan Would Have Had a Reasonable Expectation of Success

#### 1.   Substantial Evidence Supports the Reasonable Expectation of Success Finding

The obviousness analysis requires determining whether a skilled artisan would have had a "reasonable expectation of success" in reaching the claimed

invention. *Intelligent Bio-Systems*, 821 F.3d at 1367 ("The reasonable expectation of success requirement refers to the likelihood of success in combining the [prior art] references to meet the limitations of the claimed invention."). This Court has explained that "[o]bviousness does not require absolute predictability of success;" instead, "all that is required is a reasonable expectation of success." *In re O'Farrell*, 853 F.2d 894, 903-904 (Fed. Cir. 1988); *see also Accorda Therapeutics, Inc. v. Roxane Labs., Inc.*, 903 F.3d 1310, 1333 (Fed. Cir. 2018) (stating that the Court "has long rejected a requirement of '[c]onclusive proof of efficacy' for obviousness") (citation omitted). Thus, "obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007). The predictability of the applicable technology is a consideration in the analysis. *See, e.g.*, *In re Kubin*, 561 F.3d 1351, 1360 (Fed. Cir. 2009) (in analyzing obviousness, the Court "cannot deem irrelevant the ease and predictability" of the art); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 640 F. App'x 951, 962 (Fed. Cir. 2016) (non-precedential) (considering the "highly predictable nature of the technology" in the reasonable expectation of success analysis).

The Examiner and Board found that a skilled artisan would have had a reasonable expectation of success in trying to implement a zoomable browser, such

as the Pad++ browser, on a mobile device.  Appx16-23; Appx2325-2327; Appx3224-3235.  Specifically, the prior art suggests operating Pad++ on a PDA.  Appx16; Appx2325-2326.  The fact that the references expressly state that Pad++ was intended to run on devices with small screens, such as PDAs, is substantial evidence that a skilled artisan would have had a reasonable expectation of success in doing so.  *Id.*

The Examiner and Board also relied on Professor Bederson's testimony regarding running Pad++ on a PDA.  Appx17-18; Appx3222.  When asked if Pad++ could have run on a PDA in 1995, Professor Bederson testified, "conceptually, yes, it should run" because a PDA is a "general purpose computer system."  Appx2949-2950.  Still, he noted that "technically, it would have been a challenge to get it work well, that is with . . . smooth zooming" because of the slower processors available at the time.  Appx2949.  Professor Bederson was then asked the same question, but for the 1999 timeframe.  Appx2950.  He responded that "it would have been easier by 1999 because the devices were more capable."  *Id.*  For all of these responses, Professor Bederson noted that this was an estimate, as he never attempted to run Pad++ on a PDA.  Appx2949-2950.

### 2.  SoftView's Arguments to the Contrary Reflect an Overly-Restrictive Understanding of Obviousness

SoftView argues that a skilled artisan could not have made the claimed invention because Pad++ would not have worked on any mobile device available

in 2001.  *See, e.g.*, Br. at 51-52.  SoftView looks to the technical details of Pad++, including a list of "zooming interface requirements" that was "not meant as a formal definition of the requirements of a ZUI," (*see* Appx818-820) to see if they would have been compatible with the technical specifications of mobile devices in 2001.  Br. at 56-62.  Even further, SoftView's experts downloaded the Pad++ software to test its zooming capabilities on hardware that simulated the performance of mobile devices in 2001.  *Id.* at 56 (describing testing done using "the Windows version of Pad++ (version 0.9)").

This is the incorrect approach, as obviousness looks at "what the combined teachings of the references would have suggested to those of ordinary skill in the art."  *Keller*, 642 F.2d at 425.  Again, there is no requirement to show that "the features of a secondary reference may be bodily incorporated into the structure of the primary reference."  *Id.*  Thus, SoftView cannot overcome the rejection by showing that the Pad++ software, as it existed when created by Professor Bederson, would not run on the mobile devices existing at the time.  *See* Appx3225 (Examiner's Answer) (noting that the specific hardware/software capabilities of mobile devices existing at the time do not preclude an obviousness finding).  The proper analysis is broader than that, and allows for the consideration that a skilled artisan could use the zoomable browser concept disclosed in Pad++ to design a zoomable browser for a mobile device, as is suggested by the Pad++ references.

That is why the Board rejected SoftView's arguments by explaining that a skilled artisan is "a person of ordinary creativity, not an automaton." Appx19 (quoting *KSR*, 550 U.S. at 421). In fact, the obviousness "analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR*, 550 U.S. at 418; *see also Facebook Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1343 (Fed. Cir. 2020) ("[T]he fact that it would take some creativity to carry out the combination does not defeat a finding of obviousness"). Pad++ discloses a zoomable browser using vector-based page layout information, and Pad++ expressly suggests running the zooming user interface on PDAs. Appx864-871; Appx967-971; Appx1066-1076; Appx1121; Appx1671-1678. Thus, the Board correctly found that a skilled artisan using Pad++ could "experiment with the technical features (e.g., window size, touch interface, performance of processor, speed to data connection, and memory)" to reach the claimed invention. Appx19.

### 3. SoftView's Technical Arguments Fail to Demonstrate Error in the Board's Analysis

SoftView offers a litany of technical arguments about why a skilled artisan would not have had a reasonable expectation of success in making the claimed invention in 2001. Specifically, SoftView argues: (1) Pad++ was designed for a desktop computer, and could not have been easily ported to a mobile device (Br. at

30

46-47); (2) Professor Bederson's testimony regarding operating Pad++ on a mobile device is entitled to no weight (*id.* at 43-46); (3) Scott Forstall's testimony shows how difficult it was for Apple to create the iPhone, a mobile device with a zooming interface (*id.* at 47-50); (4) testing using the Pad++ software shows that, because of the available processing power of mobile devices in 2001, a skilled artisan would not have been able to achieve the 10 frames per second animation rate that Professor Bederson identified as acceptable (*id.* at 56-62); (5) evidence shows that Professor Bederson's follow-on ZUI projects in 2002-2003 worked on mobile devices, but that the animations were too slow (*id.* at 63-64); and (6) the fonts used in Pad++, as opposed to "system" fonts, would render text "substantially unreadable" on small screens with a limited resolution (*id.* at 53-54, 67-72). As explained below, each of these arguments fails to demonstrate error in the Board's analysis.

### a. The Fact That Pad++ Was Designed for a Desktop Computer Does Not Negate the Obviousness Finding

SoftView argues that because Pad++ was designed for a desktop computer, a skilled artisan "would not look to a web browsing solution and just port it to a mobile phone." Br. at 46-48. SoftView's argument is based on the list of "basic technical requirements" that the Pad++ creators felt their "zooming user interface should meet." *Id.*; Appx818-819. According to SoftView, a skilled artisan looking at these requirements would not think to run software such as Pad++ on a PDA.

Again, this argument ignores the explicit suggestion in Pad++ that the software would be "especially attractive" for PDAs. Appx1121; *see also* Appx853-854. Regardless, the list of "requirements" that SoftView relies on was "not meant as a formal definition of the requirements of a ZUI." Appx818-819. Professor Bederson testified that zooming with "smooth real time animation" was a "goal" of Pad++, but he "wouldn't say that was a requirement for Pad++ to run." Appx2955. In fact, Bederson testified that if Pad++ "was running on a much slower machine, it might operate without error and do all the things that it was supposed to do except that the frame rate of animations would be slow." *Id.* Thus, as the Examiner correctly noted, the list of technical "requirements" identified in Pad++, such as a 200 MHz Pentium Pro running Linux, were not "explicit formal requirements of the Pad++ browser" and should not be relied on to demonstrate that there was no reasonable expectation that a skilled artisan could run a zoomable browser on a mobile device. Appx3226.

Similarly, SoftView incorrectly asserts that Pad++ is not enabling because it was designed for a desktop computer rather than a mobile device. *See* Br. at 42-43. Pad++ is presumed enabled. *In re Antor Media Corp.*, 689 F.3d 1282, 1288 (Fed. Cir. 2012). The fact that the Pad++ references do not depict the zoomable browser running a mobile device is not evidence of a lack of enablement, as "the invention in a prior art publication need not have actually been made or performed

32

to satisfy enablement." *Id.* at 1290. A prior art reference is enabled if "the reference teach[es] a skilled artisan—at the time of filing—to make or carry out what it discloses in relation to the claimed invention without undue experimentation." *In re Morsa*, 803 F.3d 1374, 1377 (Fed. Cir. 2015).

As already explained, Pad++ expressly suggests running the ZUI on a mobile device (Appx853-854; Appx1121), Professor Bederson testified that a skilled artisan in 2001 should have been able to run Pad++ on a mobile device (Appx2949-2951), and the list of technical "requirements" in Pad++ were not formal requirements necessary for Pad++ to run (Appx818-819; Appx2955; Appx3226). Given this, a skilled artisan presented with Pad++ would have been able to make the claimed invention without undue experimentation, and SoftView has not overcome the presumption that Pad++ is enabled. Appx19 (Board explaining that a skilled artisan "would experiment with the technical features . . . such that Pad++ could run on a mobile device").

### b. The Board Did Not Err by Relying on Professor Bederson's Testimony

SoftView offers two criticisms of Professor Bederson's testimony, which the Board relied on in affirming the obviousness rejections. *See* Appx17-18. First, it argues that the testimony should be given no weight because of Professor Bederson's unfamiliarity with the technical capabilities of PDAs during the relevant time. Br. at 43-46. Second, SoftView points to testimony from its own

expert that PDAs were not general purpose computers because, as compared to desktop computers, they had limited processor and memory resources and different operating systems. *Id.*

Neither criticism warrants discounting the testimony. While Professor Bederson lacked detailed knowledge about the capabilities of PDAs in 1995 or 1999, his testimony supports the conclusion that a skilled artisan would have had a reasonable expectation of success in running a zoomable browser on a mobile device in the 2001 timeframe. What his testimony lacks—detail regarding the precise hardware specifications of PDAs during the time period—would be something known by a skilled artisan. As the Board found, a skilled artisan using "ordinary creativity" would have been able to match the technical requirements of a zoomable browser with the technical capabilities of a mobile device to operate the zoomable browser on the mobile device. Appx18-19. SoftView's complaints focus on routine engineering variables—processor speed, memory requirements, graphics rendering capabilities (*see* Appx2803-2804 ¶ 52)—that a skilled artisan would have been able to address. *See Kubin*, 561 F.3d at 1360 (in analyzing obviousness, the Court "cannot deem irrelevant the ease and predictability" of the art). Bederson's testimony supports the finding that a skilled artisan would have had a reasonable expectation of success in running a zoomable browser on a

mobile device in 2001.  *O'Farrell*, 853 F.2d at 903-904 (explaining that obviousness "does not require absolute predictability of success").

Finally, the '926 patent shows that there was no need to develop a new mobile device to run a zoomable browser.  The specification indicates that the claimed invention could be "used with client devices having small, low resolution displays, such as PDAs and pocket PCs."  Appx67 at col. 20, ll. 49-51.  As an example, the specification identifies the Palm IIIc PDA.  *Id.* at col. 20, ll. 54-55; *see also* Appx52-57.  There is no disclosure that the inventors needed to create a new, more powerful PDA to run the claimed browser, or that off-the-shelf PDAs lacked the processing power to run a zoomable browser.  Appx3232 (Examiner stating that "the disclosure of the '926 patent does not explicitly define any specific level of display resolution or processing power that would be necessary for a PDA or Pocket PC to possess in order to implement the functionality of the '926 patent claims at the time of the invention").

### c. Scott Forstall's Testimony Has No Relevance to This Case

SoftView points to the testimony of Scott Forstall, who testified regarding the challenges that Apple faced in designing the iPhone.  Br. at 47 (citing Appx2999-3001, Appx3038).  Mr. Forstall's testimony has no relevance to the facts at issue—he was not testifying about whether a skilled artisan in 2001 would have been capable of running a zoomable browser on a mobile device in view of

Pad++.  Instead, the cited portions of Mr. Forstall's testimony relate to Apple's development of the iPhone, and the challenges that Apple engineers faced in developing the hardware and software from the ground up for a new smartphone product.  *See, e.g.*, Appx2999-3001.  Moreover, Mr. Forstall was testifying about the challenges of "designing a web browser that could bring the entire real Internet to a mobile phone," which is not commensurate in scope with the claimed invention.  Appx2999-3000; *see also* Appx3223 ("[T]he Examiner notes that a web browser that could bring the entire Internet to a mobile phone is not a limitation of the claimed invention.").  Simply put, that Apple engineers faced challenges in designing the iPhone does not bear on the obviousness or non-obviousness of the claimed invention in the '926 patent.

### d.  SoftView's "Empirical Test Evidence" is Irrelevant and Does Not Support its Non-Obviousness Argument

SoftView cites to testing that its experts performed using Pad++ software implemented on a simulated processor.  Br. at 56-62.  Again, this testimony is irrelevant because obviousness does not require bodily incorporation—it is not necessary to show that a skilled artisan could have run the exact Pad++ code on a mobile device available in 2001.  *Keller*, 642 F.2d at 425.

But, beyond the legal reasons that this testing does not demonstrate non-obviousness, the testing is based on the flawed premise that the zooming needed to meet a minimum animation rate.  According to SoftView, the testing shows that

36

the Pad++ software would perform the zooming functions, but that the zooming was much slower than "the minimum 10 [frames per second] animation rate." Br. at 58-59. SoftView finds this alleged minimum animation rate not in the '926 patent, but from Pad++'s "zooming interface requirements." *Id.* at 17 (citing Appx819). SoftView's experts based their opinions on whether their testing of Pad++ could meet the alleged 10 frames per second requirement. *See, e.g.*, Appx2762 ¶ 97; Appx2767 ¶ 106. As already explained, these "requirements" were "not meant as a formal definition" of the technical requirements for Pad++. Appx818-819. Professor Bederson testified that the ability to perform zooming with "smooth real time animation" was "certainly a goal," but was not "a requirement for Pad++ to run." Appx2955. Instead, if Pad++ "was running on a much slower machine, it might operate without errors and do all the things it was supposed to do except that the frame rate of animations would be slow." *Id.*; *see also* Appx871 (disclosing that Pad++ allows for an adjustable frame rate); Appx978 (same). Finally, there is nothing about minimum frame rate in the claimed invention. *See, e.g.*, Appx74. Thus, there is simply no reason to believe that testing of frame rate animation speeds is relevant to the obviousness inquiry.

The same goes for SoftView's focus on the Pad++ reference platform using a 200 Mhz Pentium Pro processor (*see* Br. at 61), as SoftView again neglects to acknowledge that this type of processor was not meant to be a formal requirement

for Pad++.  Appx818-819; Appx3226.  As the Board found, a skilled artisan could experiment with technical features such as "window size, touch interface, performance of processor, speed to data connection, and memory" to achieve a zoomable browser on a mobile device.  Appx19.

Regardless, even if SoftView's testing were relevant to the obviousness inquiry, and even if the testing accurately simulated conditions that a skilled artisan would have faced, the results do not align with SoftView's claims.  SoftView's experts testified that in their testing, the zooming worked, but that it was slow and somewhat unpredictable.  Appx2767 ¶¶ 106-107; Appx2801 ¶ 44.  From this, the experts asserted that it made the zooming "unusable."  Appx2767 ¶¶ 106-107.

The experts do not address this testing in the context of the claimed invention—there is no analysis regarding why a skilled artisan would lack a reasonable expectation of success in reaching the invention as claimed.  *See, e.g.*, Appx2762-2767 ¶¶ 96-107.  Instead, the experts' analysis is more akin to looking at whether the zooming capability was "usable" as a real-world product.  *Id.*  But that is not the required analysis—the reasonable expectation of success standard is not looking at whether the prior art would result in a commercial product that performed up to the standards required by end users.  Instead, the reasonable expectation of success analysis is focused on whether a skilled artisan would have had a reasonable chance of reaching the *claimed invention* in view of the prior art.

38

*Pfizer*, 480 F.3d at 1364.  While the simulation of using Pad++ on mobile device may not have resulted in an experience that was acceptable for use as a real-world product, it worked well enough to support a reasonable likelihood of success finding.

### e.  Professor Bederson's Subsequent Projects Do Not Impact the Obviousness Inquiry

SoftView points to subsequent zooming projects by Professor Bederson (called FishCal and DateLens) as alleged evidence of non-obviousness.  Br. at 63-64.  The article describing FishCal notes that while the authors were able to get FishCal running on a Pocket PC device, "the animations were so slow as to make it unusable."  Appx3095.  The article describing DateLens notes that some of the features were not available on the mobile device version (as compared to the desktop computer version) "because of the limited processing power."  Appx3113. The Examiner considered this evidence and found that, regardless of any problems in Professor Bederson's subsequent projects, "the Pad++ references clearly provide a motivation for implementing the Pad++ browser on a mobile device having a smaller display such as a Nokia Communicator device, a Palm device, and/or an Apple Newton device."  Appx3234.

As described above, the fact that there were issues with animation speed and processing power with Pad++ or any subsequent projects does not affect the relevant question—whether a skilled artisan would have had a reasonable

39

expectation of success in reaching the claimed invention. The claimed invention does not require any specific animation rate or processing power benchmarks. *See* Appx74. Professor Bederson testified that if Pad++ "was running on a much slower machine, it might operate without errors and do all the things it was supposed to do except that the frame rate of animations would be slow." Appx2955. While inferior processing power may have rendered the products unsuitable as real-world commercial products, that is not indicative of non-obviousness. *Cf. Mouttet*, 686 F.3d at 1334 ("[J]ust because better alternatives exist in the prior art does not mean that an inferior combination is inapt for obviousness purposes.").

### f.  The Alleged Problems With Pad++'s Text Rendering is Not Evidence of Non-Obviousness

SoftView asserts that its simulations running Pad++ on a mobile device show that the font is "very low quality" and would be "substantially unreadable" on a small screen with a limited resolution. Br. at 67. These arguments again ignore that the test for obviousness is not whether the Pad++ software, as it existed, could be ported to a mobile device. *Keller*, 642 F.2d at 425. A skilled artisan would not be limited to using every feature of Pad++, including the font type. Instead, obviousness focuses on "what the combined teachings of the references would have suggested to those of ordinary skill in the art." *Id.*

SoftView is incorrect in asserting that Pad++'s discussion of font types teaches away from the claimed invention.  Br. at 72.  SoftView points to a passage in Pad++ discussing challenges associated with using bitmap fonts.  *Id.* (citing Appx825).  SoftView has not pointed to any specific font requirement in the claimed invention that this portion of Pad++ teaches away from.  While the '926 patent specification includes discussion of exemplary font types (*see* Appx67 at col. 20, ll. 32-44), the claims are not limited to any particular font type.  For a reference to teach away, it must "criticize, discredit, or otherwise discourage investigation into the *claimed invention*."  *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1373 (Fed. Cir. 2020) (emphasis added) (citation omitted).  Because SoftView does not assert that the use of a bitmap font is a limitation in the claims, there can be no teaching away.

Moreover, even if use of a bitmap font were a requirement of the claimed invention, the identified passage in Pad++ does not teach away.  The passage expresses a preference for Pad++'s font solution over bitmap fonts (*see* Appx825), but does not state that bitmap fonts "should not" or "cannot" be used in a zoomable browser.  *Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1090 (Fed. Cir. 1995); *see also Purdue Pharma L.P. v. Depomed, Inc.*, 643 F. App'x 960, 965 (Fed. Cir. 2016) (non-precedential) (finding that a reference that expressed a preference for one dosage form over another does not teach away).

41

### F.    SoftView's Remaining Arguments Lack Merit

#### 1.    SoftView Forfeited Any Argument Regarding the Touch-Sensitive Display Limitation

SoftView faults the Board for failing to address the "touch-sensitive display" limitation in claim 1.  Br. at 72-73; Appx74.  The Examiner found that Pad++ taught or suggested a touch-sensitive display.  *See* Appx2302 (incorporating by reference Replacement Claim Chart CC-F); Appx3836; Appx853.

The Board did not address the touch-sensitive display limitation in claim 1 because SoftView did not raise an argument regarding that limitation.  *See generally* Appx2613-2682; Appx3505-3545.  Thus, SoftView forfeited any argument about this limitation.  As this Court has made clear, it will not consider arguments not raised before the Board.  *Watts*, 354 F.3d at 1367 ("[I]t is important that the applicant challenging a decision not be permitted to raise arguments on appeal that were not presented to the Board."); *In re Google Tech. Holdings, LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (stating the "important principle" that "a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances").

In alleging that the Board failed to address the touch-sensitive display limitation, SoftView cites to a single section of its Appeal Brief before the Board.  Br. at 73 (citing Appx2671-2672).  But that section addresses a different issue— limitations in claims 12, 14, and 42.  Appx2668-2678.  The cited pages mention

nothing about the "touch-sensitive display" of claim 1.  Appx2671-2672.  Because

SoftView's briefing to the Board did not raise any argument about the "touch-

sensitive display" limitation in claim 1, it has forfeited its argument regarding that

limitation.

## 2. The Board Did Not Shift the Burden to SoftView to Prove Patentability

SoftView incorrectly asserts that the Board shifted the burden to SoftView to

prove that Pad++ could not be combined with all browsers and that Pad++ could

not be implemented on all PDAs.  Br. at 73-75.  First, the Board did not rely on

any additional browsers beyond the Pad++ browser in affirming the rejections.

Appx7 (agreeing with the Examiner that "the zoomable HTML web browser of

Pad++ Tour" discloses the "preserving" limitation in claim 1).  So the assertion

that the Board required SoftView to disprove that Pad++ would not work with all

browsers lacks a factual basis.

Second, the Board did not require SoftView to show that Pad++ could not be

implemented on all PDAs.  Instead, the Board found that, given the disclosure that

Pad++ was "especially attractive" for devices with small screens like PDAs, a

skilled artisan exhibiting ordinary creativity would have been able to reach the

claimed invention.  Appx15-18.  Nothing in the Board's decision shows that the

Board shifted the burden to prove non-obviousness, and SoftView does not

identify any specific portions in the Board's decision to support its assertion.  Br. at 75.

### 3.  The Board Did Not Enter a New Ground of Rejection

SoftView argues that the Board entered a new ground of rejection based on the identification of the browser relied upon to satisfy the requirements of claim 1.  Br. at 75-76.  SoftView's argument fails both procedurally and substantively.

The Board's rules state that the failure to file a request for rehearing requesting that the Board designate its decision as a new ground "will constitute a waiver of any arguments that a decision contains an undesignated new ground of rejection."  37 C.F.R. § 41.50(c); *see also In re Hill-Rom Servs., Inc.*, 634 F. App'x 786, 792 (Fed. Cir. 2015) (non-precedential).  After the Board issued its decision, SoftView did not seek rehearing.  *See* Appx33; Appx3619-3621.  SoftView's failure to file a request for rehearing before the Board means that SoftView waived its new ground argument.

SoftView's argument fares no better on the merits.  In making the rejections, the Examiner relied on the Pad++ browser in finding that Pad++ disclosed the limitations in claim 1.  *See, e.g.*, Appx3209-3210 (stating that "the Pad++ Tour reference clearly shows the Pad++ HTML browser preserving the original page layout, functionality, and design of the HTML code of the portion of the Web page that has been translated and rendered").  Contrary to SoftView's suggestion, the

Examiner stated that "no specific version of the HTML standard is required by the current claim language and that combining the simple zoomable Pad++ browser with Mosaic and Netscape is not necessary to meet the current claim language." Appx3211.  The Board's decision is fully consistent with the Examiner's rejection, as the Board relied on the Pad++ browser in affirming the rejection of claim 1.  *See* Appx7 (citing Appx3210 and "agree[ing] with the Examiner's findings").  Because the Board's decision tracks the reasoning provided by the Examiner, the Board did not enter a new ground of rejection.  *In re Kronig*, 539 F.2d 1300, 1303 (CCPA 1976) (finding no new ground of rejection when "[t]he basic thrust of the rejection at the examiner and board level was the same").

## V.   CONCLUSION

For the foregoing reasons, the Board's decision should be affirmed.

Respectfully submitted,

January 25, 2021

/s/ Michael S. Forman
THOMAS W. KRAUSE
Solicitor

FARHEENA Y. RASHEED
Deputy Solicitor

MICHAEL S. FORMAN
FRANCES M. LYNCH

45

Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. Cir. R. 32(b).  The total number of words in the foregoing brief is 9,987, as calculated by Microsoft Word 2016.

/s/ Michael S. Forman
MICHAEL S. FORMAN
Associate Solicitor
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2021, I electronically filed the foregoing

BRIEF FOR APPELLEE—DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK

OFFICE with the Court's CM/ECF filing system, which constitutes service,

pursuant to Fed. R. App. P. 25(c)(2) and Fed. Cir. R. 25(e).


/s/ Michael S. Forman
MICHAEL S. FORMAN
Associate Solicitor
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450